489 F.2d 933
 Fed. Sec. L. Rep. P 94,208
Richard M. BARANCIK et al., Plaintiffs-Appellees,
v.
INVESTORS FUNDING CORPORATION OF NEW YORK, a New York
corporation, and Invesco Holding Corporation, a
New York corporation, Defendants-Appellants.
 No. 73-1302.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 17, 1973.
Decided Nov. 5, 1973.
 
 Granvil I. Specks, Chicago, Ill., Raymond Shack, New York City, for defendants-appellants.
 Jerome H. Torshen, Chicago, Ill., for plaintiffs-appellees.
 Before PELL and STEVENS, Circuit Judges, and CHRISTENSEN,* Senior District Judge.
 STEVENS, Circuit Judge.
 
 
 1
 The question presented by this appeal is whether the anti-injunction statute, 28 U.S.C. 2283,[1] prohibits a federal court from staying proceedings in a state court which were not commenced until after a motion to enjoin the institution of such proceedings was filed. We hold that 2283 does not apply.
 
 I.
 
 2
 To understand the issue on appeal we need only briefly describe the basic transaction between the parties, the matters in dispute between them, and the chronology of court proceedings that led to the entry of the preliminary injunction.
 
 
 3
 In 1969 plaintiffs were the beneficial owners of real estate at 100 East Bellevue Place in Chicago which they intended to improve by constructing a high rise residential building. They retained defendant Dwinn-Shaffer and Company, a mortgage broker, to arrange financing of approximately $7,300,000. Of this amount, $6,100,000 was provided in the form of a loan from the Prudential Life Insurance Company secured by a first mortgage, and $1,000,000 was provided by defendant Investors Funding Corporation of New York (IFC) as the purchaser-lessor in a so-called sale and lease back transaction. At the closing in 1971, title to the premises was conveyed to IFC in exchange for the purchase price of $1,000,000 and the execution of a 99-year lease.[2] Thus, plaintiffs' right to possession, which derived from their status as beneficial owners prior to the closing, thereafter depended on their performance as tenants of the terms and conditions of the lease.
 
 
 4
 In due course disputes arose relating to plaintiffs' obligation to make monthly deposits for real estate taxes, to remit portions of security deposits by sublessess, and to discharge mechanic's and materialman's liens. Moreover, plaintiffs allegedly became aware of the fact, unknown prior to the closing, that defendant IFC owned an 8% interest in defendant Dwinn-Shaffer.
 
 
 5
 On April 25, 1972, plaintiffs filed suit in the federal court. In Court I they alleged that the failure to disclose the affiliation between IFC and Dwinn-Shaffer, the mortgage banker they had retained as their agent, was a violation of Rule 10b-5 promulgated pursuant to the Securities Exchange Act of 1934.[3] Plaintiffs' complaint stated that the proceeds of the sale-lease back transaction were being tendered to defendant's escrowee, and prayed for a rescission of that transaction, a judgment for interest on certain funds held by or at the direction of defendants, and for costs. In Counts II and III of the complaint, plaintiffs based federal jurisdiction on diversity of citizenship, raised the state law issues in dispute, and prayed for damages and a declaratory judgment.
 
 
 6
 On June 23, 1972, before responding to the complaint, defendants served a formal notice of default on plaintiffs, stating that unless deposits totaling $131,054.88 were remitted within seven days and all liens discharged, defendants would proceed to exercise all of their rights under the law and as set forth in the lease.
 
 
 7
 On June 30, 1972, defendants filed a motion to dismiss the complaint. The motion was supported by affidavits and gave rise to various filings by both parties directed to the merits. The motion was ultimately denied.
 
 
 8
 On July 27, 1972, plaintiffs filed the motion which eventuated in the entry of the injunction before us. In that motion plaintiffs recited the matters claimed by defendants to constitute defaults, denied that any default existed, asserted that the issues raised by the claims of default had also been raised by the federal complaint and the defendants' motion to dismiss, and requested the court to restrain defendants from commencing any separate legal action arising out of the subject matter of the pending case, or taking any other action to the detriment of the reputation of the 100 East Bellevue building as a luxury high rise apartment.
 
 
 9
 During the period between July 27, 1972, and January 5, 1973, both parties filed various papers relating to the pending motions, and, at the direction of the court, endeavored to resolve as many of their differences informally as possible. The trial judge was engaged in a protracted criminal trial at this time and postponed ruling on the outstanding motions while settlement discussions were held. On January 5, 1973, he entered an order directing the parties to make a report on January 16, 1973, on the status of the questions raised by the request for interlocutory relief.
 
 
 10
 On January 11, 1973, defendants filed a forcible entry and detainer action in the Municipal Court of Chicago,[4] alleging that plaintiffs were in default under the lease and seeking possession of the premises. Trial of that peremptory action was set for January 25, 1973.
 
 
 11
 On January 16, 1973, the parties appeared in the federal district court, advised the judge of the new development, and were ordered to file additional memoranda by January 19, 1973.
 
 
 12
 On January 25, 1973, the day before the state trial was to commence, the district court enjoined defendants from prosecuting any proceeding to adjudicate the interests of the parties in the real estate at 100 East Bellevue or from selling or otherwise disposing of any interest in that land until further order of court.
 
 
 13
 The district court filed a memorandum explaining the reasons for the issuance of the injunction. The court held that 2283 was not applicable to a state court proceeding which was not commenced until after the federal action.[5] Moreover, since the federal action sought to adjudicate rights and interests in land, the court found that it was necessary to maintain the status quo in order to preserve the court's ability to grant effective relief; accordingly, it held in the alternative that the statute permitted the federal court to grant an injunction which was 'necessary in aid of its jurisdiction.'[6]
 
 II.
 
 14
 The timing of a litigant's resort to the state court is significant. Timing may affect the exercise of a federal judge's discretion; it may also affect his power.
 
 
 15
 As a matter of discretion, if a litigant, to no avail, has used his best efforts to obtain a ruling on an issue pending in federal court, his initiation of state proceedings amy demonstrate nothing more than appropriate diligence. On the other hand, if a defendant has endeavored to delay proceedings or to forestall decision on issues pending in the federal court, a similar act may represent an attempt to obtain a more favorable forum. It may tend to fragment litigation which is best decided as a single matter; it may even evidence disrespect for the federal tribunal.
 
 
 16
 In this case we have no occasion to consider whether defendants' timing was a factor that militated in favor of, or against, the entry of the injunction. For we are not asked to review the exercise of the Chancellor's discretion. It is sufficient to note that plaintiffs' status quo motion was ripe for decision by the federal court when defendants invoked the jurisdiction of the Municipal Court of Chicago, that neither party charges the other or the court with improper delay while the motion was pending, and that the court was aware of the pendency of the state action and weighed its significance before it acted. Neither the record nor the argument advanced by defendants provides any basis for concluding that the district judge abused his discretion.
 
 
 17
 Defendants' appeal challenges the power of the federal district court. They argue that unless this case falls within one of the three narrowly defined exceptions to the Anti-Injunction Act, 28 U.S.C. 2283, the trial court had no authority to stay the state proceedings and we have no alternative but to reverse. Quite clearly, the injunction was not 'expressly authorized by Act of Congress'; there was no judgment to 'protect or effectuate'; and we assume with defendants that the injunction was not 'necessary in aid of (the federal court's) jurisdiction'. Nevertheless, the applicability of the statute may be avoided by the timing of defendants' resort to the state forum.
 
 
 18
 The mere fact that the federal complaint was filed before the state proceeding was commenced is not sufficient to avoid the statutory bar.[7] On the other hand, it is equally clear that since no state action was pending on July 27, 1972, when plaintiffs filed their motion, the statute would not have prevented the federal court from entering an injunction forthwith.[8] The question presented by this record is whether defendants may obtain the benefit of the statute by commencing state proceedings while a motion to enjoin such action is pending in the federal court.
 
 
 19
 The answer to the question, in our view, turns on the mandatory character of the statute. If the statute merely identified a factor for a court to weigh in the exercise of its discretion, that factor would be appropriately evaluated as of the time of the entry of the injunction.[9] But since the statute imposes an absolute ban, circumscribing the federal court's power to act unless a case falls within one of the explicit exceptions from its command,[10] we believe its applicability must be determined as of the time when the federal court's injunctive powers are invoked.
 
 
 20
 Unless the applicability of the statutory bar is determined by the state of the record at the time the motion for an injunction is made, a litigant would have an absolute right to defeat a well-founded motion by taking the very step the federal court was being urged to enjoin. Under defendant's reading of the statute, if a federal court took time for fair consideration of the merits of a request for an injunction, the court would deliberate at its peril; its authority to rule on the pending motion could be terminated by the action of one of the litigants. We consider this possibility unseemly. For, as Mr. Justice Frankfurter stated in another context: 'Whether a defendant may be brought to the bar of justice is not for the defendant himself to decide.' United States v. United Mine Workers, 330 U.S. 258, 310, 67 S.Ct. 677, 704, 91 L.Ed. 884 (concurring opinion).
 
 
 21
 The district court has power to maintain the status quo pending decision on a doubtful question of federal jurisdiction. United States v. United Mine . workers, 330 U.S. 258, 292, 67 S.Ct. 677, 91 L.Ed. 884. During its process of deliberation, the court, not the defendant, should have the ultimate power to determine the scope of its authority.[11] It may be argued that the statute requires the federal court to protect its authority by promptly issuing a temporary restraining order. But such a construction might encourage the liberal granting of the kind of protective orders the statute was intended to prevent. Moreover, it might require the court to take action without notice to the opposing party lest the court's power be defeated before it can rule with deliberation.
 
 
 22
 The statute includes a specific exception for injunctions which are necessary in aid of the federal court's jurisdiction. Even if that exception does not apply to this fact situation, it reflects a congressional purpose to avoid subordinating the exercise of federal judicial power to the will of one of the litigants. We therefore hold that the mandatory prohibition in 2283 against injunctions staying court proceedings does not apply to state actions commenced after a motion for injunctive relief is filed in the federal court.
 
 
 23
 Our holding that the statutory bar is inapplicable does not, of course, mean that the federal court should or may ignore 'the principles of equity, comity and federalism that must restrain a federal court when asked to enjoin a state court proceeding.' Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705. We do not believe the defendant may acquire an absolute defense to a proper motion by resorting to self help. But the fact that a state proceeding has actually been commenced before the federal court acts on a pending motion is certainly a matter that should weigh heavily in the balance when the judge exercises his discretion to grant or to deny an injunction.
 
 
 24
 On the record before us we are not at all sure that our exercise of discretion would have led us to the same conclusion as the district court's. We might have accorded greater weight to the desirability of having the state law issues decided by a state court and less weight to the risk that an immediate transfer of possession would be likely to occur or would impair the effectiveness of relief by way of rescission. But the defendants have not argued, and we are not prepared to hold, that there was an abuse of discretion in entering the injunction in its present form. Since the injunctive order is interlocutory, and since the issues in the federal litigation may be better defined by defendants' answers to the complaint, it will, of course, be open to the district court to modify the outstanding injunction if it deems such action appropriate.
 
 
 25
 We merely hold that 2283 did not prohibit the entry of the order of January 25, 1973. In our view, the commencement of the state action after the filing of the status quo motion, at a time when it was apparent to all concerned that the motion was about to be decided, was merely one factor for the court to consider in exercising its discretion. The interlocutory order is therefore.
 
 
 26
 Affirmed.
 
 
 
 *
 Senior District Judge A. Sherman Christensen of the District of Utah is sitting by designation
 
 
 [1]
 That section provides: 'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'
 
 
 [2]
 We omit description of the features of the financing, such as the 10% hold back from the Prudential loan and the $200,000 loan secured by a mortgage on the leasehold interest, since those details are not material to the issue raised on appeal
 
 
 [3]
 48 Stat. 891; 15 U.S.C. 78j(b); 17 C.F.R. 240-10-b-5
 
 
 [4]
 The full name of the court is Circuit Court of Cook County, Illinois, Municipal Department, First District
 
 
 [5]
 'Where the state court proceeding is not yet pending, 2283 is no bar to the issuance of interlocutory injunction warranted by traditional equitable principles. Moore's Federal Practice P0.229(1). There is authority which suggests that a state court action is not 'pending' when it is instituted subsequent to the federal action wherein an injunction is sought, even though no federal injunction is in effect at the time the state court action is commenced. Dombrowski v. Pfister, 380 U.S. 479, 484, n. 2 (85 S.Ct. 1116, 14 L.Ed.2d 22) (1965); McSurely v. Ratliff, 282 F.Supp. 848, 853 (E.D.Ky.1967), appeal dismissed, 390 U.S. 412 (88 S.Ct. 1112, 19 L.Ed.2d 1272) (1968). Such a rule has the salutary advantage of discouraging the unseemly race to the state courthouse which occurred here while the federal court had under consideration a motion for a status quo order.' App. at 167
 
 
 [6]
 'Moreover, even if 2283 were applicable, its language would not prohibit the injunction issued here. Although the federal action is formally a personal one, it essentially seeks to adjudicate rights and interests in land and, as explained above, unless the status quo is maintained there is a risk that the Court's ability to make plaintiffs whole and effectively grant the remedy of rescission will be impaired. An interlocutory injunction is therefore 'necessary in aid of (this Court's) jurisdiction.' The federal action is in the nature of an action quasi in rem, and a federal court's implied power to enjoin a subsequent state in rem proceeding to protect its ability to adjudicate its own quasi in rem proceeding has been preserved by 2283. Moore's Federal Practice, P0.218. See also Donovan v. City of Dallas, 377 U.S. 408, 412 (84 S.Ct. 1579, 12 L.Ed.2d 409) (1964), Hyde Construction Co. v. Koehring Co., 10 Cir., 388 F.2d 501 (1968). The instant case is therefore among that category of cases where 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295 (90 S.Ct. 1739, 26 L.Ed.2d 234) (1970).' App. at 167-68
 
 
 [7]
 Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226. Nor does the fact that the injunction is addressed to the parties, rather than the state court, avoid the statutory bar. See Peck v. Jenness, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841; Donovan v. City of Dallas, 377 U.S. 408, 413, 84 S.Ct. 1579, 12 L.Ed.2d 409
 
 
 [8]
 The use of the verb 'stay' in 2283 quite clearly describes an order directed to a pending proceeding. Moreover, in Mitchum v. Foster the Court repeatedly described the anti-injunction statute as a ban against the issuance of a federal injunction against a 'pending' state proceedings. See 407 U.S. 225, 226, 228, 229, 230, 231, 92 S.Ct. 2151, 32 L.Ed.2d 705. See also Dombrowski v. Pfister, 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22; Younger v. Harris, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669
 
 
 [9]
 See, e.g., United States v. Oregon State Medical Society, 343 U.S. 326, 332-334, 72 S.Ct. 690, 96 L.Ed. 978
 
 
 [10]
 'For in (Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234) we expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions:
 "On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a 'principle of comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention . . .. (We) hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to 2283 if it is to be upheld . . ..' 398 U.S. 286-287, 90 S.Ct. 1744.
 'It follows, in the present context, that if 42 U.S.C. 1983 is not within the 'expressly authorized' exception of the anti-injunction statute, then a federal equity court is wholly without power to grant any relief in a 1983 suit seeking to stay a state court proceeding.' Mitchum v. Foster, 407 U.S. 225, 229, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705.
 
 
 [11]
 'And if the district court had power to decide whether this case was properly before it, it could make appropriate orders so as to afford the necessary time for fair consideration and decision while existing conditions were preserved. To say that the authority of the court may be flouted during the time necessary to decide is to reject the requirements of the judicial process.' Id. at 310-311, 67 S.Ct. at 704. Frankfurter, J., concurring