PHILIP MORRIS INCORPORATED; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; and Liggett Group Inc., Plaintiffs,

v.

Scott HARSHBARGER, Attorney General of Massachusetts, Defendant.

Civil Action No. 95–12574–GAO.

United States District Court, D. Massachusetts.

Nov. 22, 1996.

Marshall Simonds, Thomas J. Griffin, Jr., Goodwin, Proctor & Hoar, Boston, MA, Herbert M. Wachtell, Peter C. Hein, Ben M. Germana, Barbara Robbins, Wachtell, Lipton, Rosen & Katz, New York, NY, for Philip Morris, Inc.

Donald J. Wood, Connarton, Wood & Callahan, Boston, MA, Robert F. McDermott, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Company.

John H. Henn, David R. Geiger, Mark D. Rosen, Foley, Hoag & Eliot, Boston, MA, Stephen D. McCormick, Kirkland and Ellis, Chicago, IL, Majorie Press Lindblom, Kirkland & Ellis, New York, NY, David Bernick, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corp.

Gael Mahony, Hill & Barlow, Boston, MA, Gene E. Voigts, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Company.

Samuel Adams, Joseph J. Leghorn, Alexis S. Hamdan, Warner & Stackpole, Boston, MA, James V. Kearney, Latham & Watkins, New York, NY, James A. Cherney, Latham & Watkins, Chicago, IL, for Liggett Group, Inc.

Thomas A. Barnico, Attorney General's Office, Boston, MA, for Scott Harshbarger.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiffs, who are manufacturers of cigarettes, brought this action to obtain declaratory and injunctive relief against the defendant attorney general's threat to sue them to recover certain expenses paid by Massachusetts under its Medicaid program. The attorney general has moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. If the action is not to be dismissed, the attorney general urges the court to abstain from considering it, relying on alternative abstention doctrines. For the reasons that follow, the court denies the motion to dismiss but determines that it ought to abstain from consideration of the case until issues arising under Massachusetts law have been resolved by the courts of the Commonwealth.

## I. BACKGROUND

Under the Commonwealth's Medicaid plan and in conformity with federal requirements, Massachusetts must take reasonable measures to recover medical benefits paid on behalf of Medicaid patients from any person who is or ought to be legally liable for those expenses. See 42 U.S.C. § 1396a(a)(25); 42 C.F.R. §§ 433.135–.153. See also Mass. Gen.L. ch. 118E, § 22. News stories published throughout 1995 reported that the Massachusetts attorney general was preparing to file suit against the plaintiffs to recover money the Commonwealth had spent under its Medicaid program for the treatment of patients who had illnesses caused by smoking. The reports were based on public statements by the attorney general or members of his staff. See Compl., ¶¶ 45–50.

In March, 1995, the *Massachusetts Lawyers Weekly* carried the following classified advertisement:

> The Attorney General of Massachusetts has extensively reviewed the possibility of litigation against cigarette manufacturers and now requests qualification statements from law firms interested in undertaking such litigation at the direction of and in conjunction with the Office of the Attorney General. The purpose of the litigation would be to recover funds expended by the Commonwealth's Division of Medical Assistance for tobacco-related illnesses, as authorized by 1994 Mass.Acts 60, § 276, and to pursue related claims. Compensation to the firm selected to undertake the litigation will be paid from any monies recovered or awarded in the suit.

Compl., ¶ 48.[1] According to a newspaper report published September 21, 1995, the

---

1. The statute referred to in the *Lawyers Weekly* advertisement specifically authorizes the attorney general "to bring an action on behalf of the division of medical assistance against any liable third party who is a manufacturer of cigarettes to recover the full amount of medical assistance provided by the Commonwealth" under Medicaid. In addition to enforcement of subrogation rights, the Massachusetts division of medical as-

sistance is also given a cause of action "independent of any rights or causes of action of the [Medicaid] recipient" and "in addition to any rights or powers granted under state or federal law." 1994 Mass.Acts 60, § 276. See Compl., ¶ 39. Further, under Mass.Gen.L. ch. 118E, § 22, the division has a "separate and independent cause of action" to recover Medicaid assistance payments from any third party who might

attorney general had said he would make a final decision about filing the threatened suit by December 1. Compl., ¶ 50.

This action was commenced November 28, 1995. The complaint seeks declaratory and injunctive relief on several grounds: violation of the Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (Count I); violations of the Due Process and Equal Protection Clauses, U.S. Const. amend. XIV (Counts II, III); preemption under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by reason of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331, 1334 (Counts IV, V); violation of the Takings Clause, U.S. Const. amend. V (Count VI); violation of the Free Speech Clause, U.S. Const. amend. I (Count VII); and violations of the prohibitions against *ex post facto* laws and bills of attainder, U.S. Const. art. I, § 10 (Count VIII). The complaint also presents a claim under 42 U.S.C. § 1983 alleging a deprivation of federally protected rights under color of state law (Count IX) and a claim alleging violations of Massachusetts state constitutional, statutory, and common law (Count X).

On December 19, 1995, before any application for injunctive relief was presented or heard, the attorney general filed the anticipated lawsuit on behalf of the Commonwealth in the Massachusetts Superior Court. The complaint in that case sets forth various state law claims against the cigarette manufacturers, area cigarette distributors, and research institutes affiliated with the cigarette manufacturers. The same day, the attorney general moved to dismiss this case.

The defendants in the state court action removed the case to this court, where Massachusetts moved to remand it. This court determined that it lacked subject matter jurisdiction over Massachusetts' action and granted the motion to remand it to the Massachusetts state courts. *See Commonwealth v. Philip Morris Inc.*, 942 F.Supp. 690 (D.Mass.1996).

be liable to the Medicaid patient. *See* Compl., ¶ 41.

2. Another question decided in *Young* was whether the suit was barred by the Eleventh Amendment, which forbids suits against a state without

## II. MOTION TO DISMISS

### A. Subject Matter Jurisdiction

■ On the present motion, the attorney general's principal contention is that this court does not have subject matter jurisdiction over plaintiffs' complaint because it does not present any claim for affirmative relief arising under federal law but rather seeks only a declaration that the manufacturers have good federal law defenses to the state law claims in the Massachusetts action. Such a complaint, he contends, does not come within the federal question jurisdiction of the court.

Each side relies on a distinguished line of Supreme Court cases for support. Yet the separate lines of authority, for all their independent vitality, do not lie easily side by side. Where they come together, as they do in this case, they tend to snarl, and the doctrinal knot is not neatly undone.

■ It has long been established under a series of cases beginning with *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) that a federal court has jurisdiction over a suit to enjoin a state official's prospective enforcement of a state regulation in violation of the plaintiff's federal rights. *Ex parte Young* involved a suit by stockholders of several railroad companies against the attorney general of Minnesota to enjoin him from enforcing a state law regulating railroad rates that the petitioners asserted violated the U.S. Constitution. The Supreme Court held that the claim presented a federal question for jurisdictional purposes, *Young*, 209 U.S. at 144–45, 28 S.Ct. at 447–48, and that state officials "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Id.* at 156, 28 S.Ct. at 452.[2]

its consent. U.S. Const. amend. XI. The Supreme Court concluded that the state had no legitimate sovereign interest in the enforcement of an unconstitutional act and a suit against the attorney general was not, in such circumstances, a suit against the state. *Ex parte Young*, 209 U.S.

The *Young* doctrine was recently applied to support injunctive relief against the attorney general of Texas in a case that bears a strong similarity to the present controversy. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In *Morales*, seven state attorneys general had sent a memorandum to major airlines asserting that the airlines' advertising of frequent flyer programs appeared to violate the states' respective deceptive advertising and unfair trade practice laws. The memorandum threatened enforcement actions unless the airlines complied with certain guidelines established by the National Association of Attorneys General. After the Texas attorney general sent a letter to the airlines giving formal notice of his intent to bring suit, the airlines commenced an action in federal court seeking declaratory and injunctive relief on the ground that federal law preempted the threatened state enforcement action. The district court found preemption and granted the injunction, which decision the Fifth Circuit, and ultimately the Supreme Court, affirmed.[3] Although there was no issue raised as to jurisdiction,[4] the Supreme Court began its opinion by considering whether the district court could properly award the airlines injunctive relief. The Court invoked *Ex parte Young* to justify the grant of injunctive relief against the state attorney general. *Morales*, 504 U.S. at 380–81, 112 S.Ct. at 2035–36.[5]

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), is another instance of the recent application of the *Ex parte Young* jurisdictional doctrine. New York law forbade discrimination in employee benefits plans on the basis of pregnancy, while the federal Employee Retire-

ment Income Security Act of 1974 ("ERISA") did not. Delta Airlines and others sued the commissioner of the New York State Division of Human Rights, as well as the Commission itself, seeking a declaration that the New York law was preempted by ERISA. *Shaw*, 463 U.S. at 88–92, 103 S.Ct. at 2895–97. The question of federal jurisdiction does not appear to have been an issue raised by the parties, but the Court made a point of explaining that jurisdiction was proper under the *Young* doctrine:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. *See Ex parte Young*, 209 U.S. 123, 160–62, 28 S.Ct. 441, 454–455, 52 L.Ed. 714 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.... This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture.

*Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14. *See also Lawrence County v. Lead–Deadwood School Dist.*, 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985) (quoting *Shaw* and noting jurisdiction over declaratory judgment action where a state statute regulating the county's allocation of certain tax revenues was challenged as violating a federal statute).

■ The attorney general asserts, however, that because the plaintiffs here have a full

---

at 159–60, 28 S.Ct. at 453–54. The attorney general objects in his brief that the Eleventh Amendment prohibits the present action. If this case properly falls within the *Young* doctrine, the Eleventh Amendment objection is disposed of along with the jurisdictional objection.

**3.** The Supreme Court did, however, modify and limit the injunction because of its potential overbreadth. *Morales*, 504 U.S. at 382–83, 112 S.Ct. at 2036–37.

**4.** Neither the district court opinion, *Trans World Airlines, Inc. v. Mattox*, 712 F.Supp. 99 (W.D.Tex.

1989), nor the two related appellate court opinions, *Trans World Airlines, Inc. v. Morales*, 949 F.2d 141 (5th Cir.1991), and *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir.1990), mention *Ex parte Young* or related jurisdictional issues.

**5.** The Court refrained from considering whether abstention would nonetheless have been proper under the doctrine originating with *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Morales*, 504 U.S. at 381, 112 S.Ct. at 2035–36 n. 1. That question must be resolved in this case.

opportunity to raise their federal defenses in the state enforcement action, a federal suit is forbidden. In making this argument, he relies on *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), and the cases that follow it. *Wycoff* involved a suit by a film transporter to declare its right to transport films within Utah without being subject to regulation by Utah's Public Service Commission. The Court held that the suit was not ripe because there did not yet appear to be any "concrete controversy." *Id.* at 245, 73 S.Ct. at 241. Later in its opinion, the Court went on to remark that where a complaint in a declaratory judgment action "seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Id.* at 248, 73 S.Ct. at 242. A state court defendant, actual or potential, may not avoid the "well-pleaded complaint rule" by suing in federal court for a declaration that he has a good federal defense to state claims. *See Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). No federal question is presented here, the attorney general says, because the state enforcement action presents only state law claims, as this court has already determined.

This is where the decisional strands become entangled. *Wycoff*, it must be remembered, was written against a background where *Ex parte Young* stood as established and unquestioned law. Neither *Wycoff* itself, nor any succeeding case, has suggested that *Wycoff* weakened the authority of the *Young* jurisdictional doctrine. Moreover, the recent *Shaw* and *Morales* decisions point away from giving too strong a regard here to the *Wycoff* dictum. The *Shaw* plaintiffs could have raised a preemption defense to any suits against them under New York law in New York state courts; the *Morales* plaintiffs could have similarly defended whatever unfair trade practices suit might have been brought against them. Notwithstanding those possibilities, the Court expressly approved those federal suits under the authority of *Ex parte Young*.

It is true that the Court of Appeals has applied the *Wycoff* dictum as the law of this Circuit, *see Greenfield and Montague Transp. Area v. Donovan*, 758 F.2d 22, 26–27 (1st Cir.1985), but not without wrestling with some awkward problems created by the inconsistency between that principle and the explicit approval of federal jurisdiction in cases such as *Shaw*. In two cases, *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229 (1st Cir.1987), and *Nashoba Communications Ltd. Partnership No. 7 v. Town of Danvers*, 893 F.2d 435 (1st Cir. 1990), the court found it possible to distinguish *Shaw*. In *Colonial Penn Group*, a state court defendant who had been sued for state common law trade name infringement brought suit in federal court seeking a declaration and injunction regarding its rights under federal trademark law. The court held that it lacked jurisdiction over that suit, noting that the plaintiff was not challenging a state regulatory system but merely the actions of a private party. *Colonial Penn Group*, 834 F.2d at 230. In *Nashoba Communications*, a cable operator brought suit to declare its contractual obligations with a town to freeze its cable rates violated federal cable law. Again, the court held that it lacked jurisdiction, this time relying on a distinction between enforcing a regulatory scheme and enforcing a contract. *Nashoba Communications*, 893 F.2d at 440.

But in *Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25 (1st Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990), no acceptable distinction was available. The plaintiff, a cable program distributor, and several cable operating companies, sued the defendant commission and a prosecutor to enjoin enforcement of Puerto Rico's obscenity laws against them on federal constitutional and statutory grounds. The court restated its adherence to the *Wycoff* dictum but noted the limitations imposed on it by *Shaw*. *Playboy Enters.*, 906 F.2d at 30. The court then analyzed the arguments of *Colonial Penn Group* and *Nashoba Communications*, both of which had distinguished *Shaw*, and candid-

ly concluded that while "the meaningfulness of the distinction escapes us, we think this case is on its facts closer to *Shaw* than to *Colonial Penn Group* or *Nashoba Communications.*" [6] *Playboy,* 906 F.2d at 30; *see also Cable Television Ass'n of New York, Inc. v. Finneran,* 954 F.2d 91, 94–95 (2d Cir.1992). This case, too, seems closer to *Shaw,* and *Morales* seems to confirm that conclusion.

The attorney general also objects that the state case is not the sort of "enforcement" against which *Ex parte Young* offers protection. To be sure, the language of the *Young* line of cases typically speaks in terms of "state regulation" rather than state suits for damages. But, as these parties well know, the Supreme Court has taken note that damage actions may function very well as state regulation, for "the obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780–81, 3 L.Ed.2d 775 (1959)). *Morales,* in which the attorneys general of several states threatened suits under their respective states' statutes, lends further support to this proposition.

It should not be thought intolerably anomalous that this court has already remanded the Commonwealth's action against these plaintiffs to the state court because the claims were founded only in state law and the assertion of federal defenses did not provide, for that case, a basis for federal jurisdiction. Cases and commentators discussing *Shaw* have noted, and approved, this quirk of federal jurisdiction. *See, e.g., J. Filiberto Sanitation, Inc. v. State of New Jersey Dept. of*

*Envt'l Protection,* 857 F.2d 913, 918 (3d Cir. 1988); 13B Charles Alan Wright et al., *Federal Practice and Procedure* § 3566, at 100–02 (2d ed. 1984); Note, *Federal Jurisdiction over Declaratory Suits Challenging State Action,* 79 Colum.L.Rev. 983, 999–1000 (1979). Indeed, the Seventh Circuit did something quite similar in *People of Illinois v. General Elec. Co.,* 683 F.2d 206 (7th Cir.1982). The Illinois legislature had passed an act barring out-of-state power generating facilities from storing spent nuclear fuel at any sites in Illinois. The law, though written in broad terms, effectively targeted one site owned by General Electric. Three weeks after the passage of the act, General Electric filed suit for declaratory judgment in federal court to have the law declared in violation of both the commerce and supremacy clauses of the federal constitution. Within hours after that suit was filed, the attorney general of Illinois filed suit in state court to enforce the act. General Electric removed that suit to federal court and the cases were consolidated. *Id.* at 208.

The Seventh Circuit concluded that the state court action should have been remanded, since the only federal issues in that case would have been General Electric's federal defenses. *Id.* The declaratory judgment action, however, was held to be properly in federal court because General Electric sought to vindicate its constitutional rights under the Commerce and Supremacy Clauses of the U.S. Constitution. *Id.* at 211.[7] Such is the case in the present action. The plaintiffs do not seek a broad declaration that they are complying with all applicable laws, *cf. Wycoff,* but rather that the enforcement against them of specific provisions of the Massachusetts statutes would violate federal law.[8]

---

**6.** In a similar vein, the Supreme Court noted in *Franchise Tax Bd.,* 463 U.S. at 1, 103 S.Ct. at 2842, a case it decided the same day as *Shaw,* that the consequences of the application of these sometimes inconsistent jurisdictional rules and tests may owe more to "history than logic." *Franchise Tax Bd.,* 463 U.S. at 4, 103 S.Ct. at 2843–44.

**7.** Especially pertinent also is the court's observation that "[s]ince the impending state action will almost always be based on state law alone, the [*Wycoff*] dictum, read broadly, would overrule *Ex*

*parte Young* and every case that has ever followed it. If not wrong, such a reading would still be an inappropriate flight of fancy for an inferior federal court to take." *People of Ill. v. General Elec. Co.,* 683 F.2d 206, 211 (7th Cir. 1982).

**8.** It may also be noted that the plaintiffs in *Wycoff* had apparently abandoned their request for injunctive relief and were seeking only a general declaratory judgment. *Wycoff,* 344 U.S. at 241, 73 S.Ct. at 239. This fact was undoubtedly important to the Court's conclusion that no con-

■ Finally, this court also concludes, alternatively, that jurisdiction exists over the plaintiffs' suit by virtue of their § 1983 claim. Section 1983 does not function as a jurisdictional provision or create substantive federal rights but merely offers a remedy through which plaintiffs may vindicate those federal rights enumerated elsewhere in the face of interference by a state actor. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). Here, the cigarette manufacturers allege that the attorney general has acted in concert with certain anti-tobacco activists and other state attorneys general to deprive them of their rights guaranteed by the Constitution and laws of the United States. Compl., ¶¶ 88–89.

Whatever the merits of such a claim, it seems sufficient for jurisdictional purposes. In *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), New York welfare recipients sought injunctive relief under § 1983 against enforcement of a state regulation that authorized recoupment of prior unscheduled payments of rent from subsequent grants. The recipients claimed that the regulation violated the Equal Protection Clause of the Fourteenth Amendment and contradicted relevant portions of the Social Security Act. *Hagans*, 415 U.S. at 530–31, 94 S.Ct. at 1375–76. The Court held that such a claim was a "substantial" one sufficient to support federal question jurisdiction. *Id.* at 539, 94 S.Ct. at 1380. Although the Court's focus was on a different question from the one presented here, *Hagans* stands as an example of an action properly brought under § 1983 to enjoin enforcement of an unconstitutional state regulation.

The attorney general responds to this point by raising the *Wycoff* argument again. He suggests that if the plaintiffs' position were to be accepted, any pleader could avoid a potential dismissal under the *Wycoff* variation on the well-pleaded complaint rule simply by including a § 1983 claim. Even if that were a problem, the reciprocal problem would be greater: that if the attorney general's interpretation were accepted, legitimate § 1983 suits to enjoin unconstitutional enforcement of state regulations would routinely be barred by the *Wycoff* dictum. The plaintiffs in *Hagans*, for example, would presumably have had the opportunity to assert federal defenses to New York's potential efforts to recoup payments under state law, just as the *Wycoff* plaintiffs would have been able to defend the potential state regulatory enforcement if and when it was brought. If *Wycoff* should prevent a § 1983 action in the present case, it should have done so also in *Hagans*.

### B. The Anti-Injunction Act

■ The defendant also asserts that the Anti–Injunction Act, 28 U.S.C. § 2283, should bar the plaintiffs' action. The Anti–Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Act does not apply here for the simple reason that the plaintiffs filed their suit first. Where the plaintiff invokes the federal court's injunctive power before the state court action has commenced, the Act does not bar the federal court from granting relief. *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 n. 6 (1st Cir.1988). Although the Circuit Courts of Appeal are by no means in agreement on this point, *compare National City Lines, Inc. v. LLC Corp.* 687 F.2d 1122, 1127 (8th Cir.1982) (Act does not apply) *and Barancik v. Investors Funding Corp. of New York*, 489 F.2d 933, 937 (7th Cir.1973) (same) *with Royal Insurance Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877, 885 (5th Cir.1993) (Act does apply) *and Standard Microsystems Corp. v. Texas Instruments*, 916 F.2d 58, 61–62 (2d Cir. 1990) (same) *and Roth v. Bank of the Commonwealth*, 583 F.2d 527, 533 (6th Cir.1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852,

---

crete controversy was presented. The plaintiffs here have not abandoned their request for injunctive relief, although they concede that the state lawsuit should not be enjoined until the

state courts have interpreted certain critical state law issues. *See Railroad Comm'n of Tex. v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

61 L.Ed.2d 292 (1979) (same), the First Circuit has spoken.[9]

### C. *Rooker–Feldman* Doctrine

■ The attorney general also argues that the request for an injunction here would violate the rule that, with the exception of habeas corpus petitions, only the United States Supreme Court may review and reverse or modify the judgment of a state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). His argument apparently is that granting the plaintiffs the relief they request would be tantamount to reviewing a state court judgment in advance.

The *Rooker–Feldman* doctrine does not come into play in such circumstances. It pertains only to review of a state judgment that has become *final. See Feldman*, 460 U.S. at 476, 482, 103 S.Ct. at 1311–12, 1314–15; *Rooker*, 263 U.S. at 416, 44 S.Ct. at 150. Since there has been no final judgment, the doctrine is not germane.

### D. Ripeness

The attorney general further asserts that this case is not ripe for adjudication. The ripeness doctrine is "mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies, *see* U.S. Const. art. III, § 2." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir.1995). "[A] court has no alternative but to dismiss an unripe action." *Id.* To resolve a question of ripeness, the court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ A claim may not be fit for review if its resolution must rest upon "speculative facts or a hypothetical record." *Ernst &* *Young*, 45 F.3d at 536. On the other hand, a claim is fit for review so long as it does not involve "uncertain and contingent events that may not occur as anticipated or may not occur at all." *Massachusetts Ass'n of Afro–American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir.1992). "[C]ases that turn on legal issues not likely to be significantly affected by further factual development" may be considered ripe for adjudication. *Ernst & Young*, 45 F.3d at 536.

■ The second part of the ripeness inquiry "focuses on the hardship that may be entailed in denying judicial review." *Ernst & Young*, 45 F.3d at 536. The requisite hardship does not always have to be direct and immediate harm; "other kinds of injuries occasionally may suffice." *Id.* So, for example, the fact that a challenged statute has not formally taken effect will not defeat the challenge on ripeness grounds, so long as the statute will inevitably become effective and when it does will substantially affect the challenger. *See Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974) ("Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect."). *See also Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.") Further, "an injury sufficient to impute ripeness may also be found when a plaintiff must presently decide to expend substantial resources which may turn out to be wasted, depending on later clarification of the law." *Ernst & Young,* 45 F.3d at 536.

■ The plaintiffs' complaint is ripe under this test. The element of fitness is present because the complaint does not pertain to contingent events uncertain to occur. The

---

9. The Anti–Injunction Act would not apply here for the additional reason that the plaintiffs have brought their suit in part under 42 U.S.C. § 1983. In that section Congress has expressly authorized a suit for injunctive relief against a state court proceeding. *See Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

attorney general's threat to sue these plaintiffs was a specific one, just like the Texas attorney general's threat in *Morales,* and he has in fact filed the state suit. This is not a case, as in *Wycoff,* for example, where the prospect of action by state regulators was speculative or remote.

The element of hardship is also sufficiently present. The attorney general's attempt to hold the plaintiffs liable under state law theories that they say are unconstitutional may plausibly "require the industry to chart a course of action [for the near future] without knowing whether [the state law theories may be constitutionally] valid." *Ernst & Young,* 45 F.3d at 537 (citing *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983)).

The attorney general's contention that this action cannot be ripe until the state enforcement action has been completed and has resulted in a final judgment against these plaintiffs must be rejected. That approach would prevent most cases brought under *Ex parte Young* from being heard in time to give the relief that the *Young* doctrine sanctions. The proposition represents too broad an interpretation of the ripeness doctrine and too constricted an understanding of the *Young* doctrine.

## III. ABSTENTION

### A. *Younger* Abstention

█ The attorney general's chief argument for abstention invokes the Supreme Court's line of cases beginning with *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). These cases call for federal courts to abstain from entertaining cases that involve issues that are the subject of a currently pending state court proceeding where: (1) vital state interests are involved; (2) there is an ongoing state judicial or administrative proceeding; and (3) the federal plaintiff will have an adequate opportunity in the state proceeding to raise constitutional

challenges. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1368 (1st Cir.1995).

The second and third requisites are plainly met here. There is no question that there is an ongoing state proceeding.[10] Further, the plaintiffs here would be able adequately to raise all their federal defenses in the state court proceedings. The critical question, then, is whether the state court proceeding involves such "vital state interests" that *Younger* abstention is proper.

█ *Younger* itself concerned a state criminal prosecution, but the abstention doctrine it gave rise to has since been extended to apply to a variety of civil enforcement proceedings. The Supreme Court has noted that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521. So, disciplinary proceedings against state-licensed professionals are an example of a state's enforcement of vital interests. *See, e.g., Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521 (lawyers); *Bettencourt v. Board of Registration in Medicine,* 904 F.2d 772, 778 (1st Cir.1990) (physicians); *Allen v. Louisiana State Bd. of Dentistry,* 835 F.2d 100, 103 (5th Cir.1988) (dentists). Zoning regulations are another. *See, e.g., World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079, 1082–83 (9th Cir.1987); *Loftus v. Township of Lawrence Park,* 764 F.Supp. 354, 357 (W.D.Pa.1991); *Sendlewski v. Southampton,* 734 F.Supp. 586, 591 (E.D.N.Y.1990). Federal courts have also applied *Younger* to refrain from interfering with various aspects of state judicial proceedings, such as a court's civil contempt order, *see Juidice v. Vail,* 430 U.S. 327, 336, 97 S.Ct. 1211, 1217–18, 51 L.Ed.2d 376 (1977), or its ability to enforce its judgments through certain bond requirements. *See Pennzoil Co. v. Texaco,*

---

**10.** The fact that the Commonwealth initiated that proceeding three weeks after this one began is of no moment here, given the early stage in which the federal litigation stood (and remains standing) at the time of that filing. *See Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975).

*Inc.*, 481 U.S. 1, 12–14, 107 S.Ct. 1519, 1526–28, 95 L.Ed.2d 1 (1987).

These cases are helpful illustrations of the application of the *Younger* abstention principle, but they do not decide the present case. They show that, in general, the *Younger* doctrine has been invoked to keep federal courts from interfering in a state's pursuit of sovereign governmental interests—its exercise of police or regulatory powers, for example—regardless of whether the enforcement process is strictly defined as criminal or civil. Massachusetts' pending state court suit is not that kind of enforcement proceeding, however. It is a suit for money damages. The question is whether that interest—recouping from liable third-parties money paid to Medicaid beneficiaries—is within the zone of "vital state interests" to which the *Younger* doctrine gives its special recognition.

The attorney general argues that *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), mandates *Younger* abstention in this case. In *Trainor*, the Illinois Department of Public Aid had filed suit in state court alleging that two recipients had fraudulently concealed their assets when they applied for and received public assistance. The Department initiated attachment proceedings against the couple. The Hernandezes responded with their own suit in federal court challenging the attachment procedure and seeking a return of their attached property. The Supreme Court held that the district court should have abstained under *Younger*. Although the Court recognized that the state proceedings were civil in nature, it pointedly noted that the State of Illinois had initiated them in its sovereign capacity to vindicate important state interests: "safeguarding the fiscal integrity of [its public assistance] programs." *Trainor*, 431 U.S. at 444, 97 S.Ct. at 1918.

At first blush, *Trainor* has a likeness to the present case, but on a closer look it is not alike enough. The Court's language in *Trainor* indicates that it did not mean to extend *Younger* to cover every kind of state suit to recover money paid out under public assistance programs. Both the opinion of the Court, subscribed by four Justices, and Justice Blackmun's concurrence emphasized that

Illinois was pursuing through civil means interests it might have chosen to vindicate through a criminal prosecution. *Trainor*, 431 U.S. at 444, 449–50, 97 S.Ct. at 1918, 1920–21 (Blackmun, J., concurring). In the Court's view, Illinois was acting in its traditional sovereign role to protect its programs against fraudulent claims.

It is true that by its suit Massachusetts is acting in some sense to "safeguard[ ] the fiscal integrity" of its Medicaid program. *See id.* at 444, 97 S.Ct. at 1918. In doing so, however, it is acting less like a sovereign than a subrogee. Under both federal and state statutes, Massachusetts is required to pursue liable third parties for amounts paid on behalf of Medicaid beneficiaries. 42 U.S.C. § 1396a(a)(25); Mass.Gen.L. ch. 118E, § 22. In suing the cigarette manufacturers for the cost of treating diseases caused by smoking, Massachusetts is seeking a remedy that is classically in the nature of subrogation.

The attorney general insists, however, that the new Massachusetts enactments grant the Commonwealth a "separate and independent" cause of action to recover money paid out in Medicaid benefits, and the state suit is brought to enforce that new, direct remedy, rather than the Commonwealth's subrogation rights. *See* Mass.Gen.L. ch. 118E, § 22 (as amended by 1995 Mass.Acts 38, § 131); 1994 Mass.Acts 60, § 276. The nature of the new cause of action is not yet clear. Presumably, the prosecution of the state case will help define it. One possibility is that the new right of action will be interpreted (notwithstanding the attorney general's present characterization of it) as a species of subrogation right, perhaps one not subject to traditional subrogation defenses. In that event, the state interest being vindicated will still be more properly characterized as "subrogation-like" than as "sovereign," and thus different from Illinois' interest recognized in *Trainor*.

On the other hand, the new state cause of action may be interpreted to be substantively different from a subrogation claim. In that event, the question will recur whether the action so construed amounts to an assertion of sovereign interests sufficient to bring the case within the scope of the *Trainor* holding.

That question cannot be answered until the right of action has been interpreted by the Massachusetts courts. As things stand at present, Massachusetts' suit to recover Medicaid payments seems very like an ordinary subrogation claim. So long as it seems that way, *Trainor* is not a reason to apply *Younger* abstention.

The attorney general says that Massachusetts' interest must be a "vital" one because the Commonwealth seeks to recover hundreds of millions, if not billions, of dollars for the state treasury. But it is not the amount of a potential recovery that matters. The Supreme Court has advised that the focus of the *Younger* inquiry should be on the "importance of the generic proceedings to the State" rather than "its interest in the *outcome* of the particular case." *New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 2516–17, 105 L.Ed.2d 298 (1989) (emphasis in original).[11] The generic nature of the state proceeding involved here is the pursuit of third parties to recoup Medicaid payments the third parties may be responsible for under state law. That is a different, and substantially less "vital," interest than the one the Court discerned in *Trainor*.

Of course, it could be argued that whenever a state sues to recover any amount of money for its treasury, it has an important interest at stake. *See Trainor*, 431 U.S. at 450, 97 S.Ct. at 1921 (Blackmun, J., concurring) ("Since the benefits of the recovery of fraudulently obtained funds are enjoyed by all the taxpayers of the State, it is reasonable to recognize a distinction between the State's status as creditor and the status of private parties using the same procedures."). The Court's opinion, however, expressly refrained from extending *Younger* to "all civil litiga-tion." *Trainor*, 431 U.S. at 444 n. 8, 97 S.Ct. at 1918 n. 8. And two years later, the Court rejected the suggestion "that every pending proceeding between a State and a federal plaintiff justifies abstention" under *Younger*. *Moore v. Sims*, 442 U.S. 415, 423 n. 8, 99 S.Ct. 2371, 2377 n. 8, 60 L.Ed.2d 994 (1979).

Indeed, the Supreme Court has repeatedly emphasized "that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, —— U.S. ——, ——, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996). "Generally, as between state and Federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.'" *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504–05, 54 L.Ed. 762 (1910)). In this respect, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244. *See also Chaulk*, 70 F.3d at 1368. To apply the *Younger* doctrine and abstain in the present case would go a long way toward reversing that relationship and making abstention the rule, not the exception.[12]

## B. *Pullman* abstention

■ As a final option, the attorney general proposes that abstention is appropriate under the doctrine deriving from *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under *Pullman* abstention, a federal court may abstain from hearing federal statutory and constitutional issues until uncertain underly-

---

**11.** The idea that because Massachusetts may recover a very large sum in damages its interest must therefore be "vital" mirrors the cigarette manufacturers' unsuccessful contention, made in opposing the remand of the state lawsuit, that the magnitude of the stakes should be a factor weighing in favor of keeping the case in federal court, a contention dismissively characterized by the attorney general as "Fortune 500 jurisdiction."

**12.** The court recognizes that this result brings with it a note of disharmony. There is, after all, some tension between the conclusion that the attorney general's actions in bringing suit on behalf of Massachusetts amount sufficiently to state enforcement for *Ex parte Young* purposes but insufficiently so for *Younger* purposes. But it is only a tension that exists and not an inconsistency, because the pertinent considerations are not quite the same under each doctrine, and that tension is a consequence of the conflict inherent in the problem of working out the intricate matter of federal-state relationships through case-by-case consideration.

ing issues of state law have first been resolved by the state courts. Unlike *Younger* abstention, the *Pullman* doctrine does not lead to outright dismissal of a case; rather, the federal court stays its hand until the state courts have conclusively decided all relevant state law issues. When that has happened, the federal court, armed with the state courts' interpretation, resumes the task of adjudicating the federal issues in the case. *See England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 421, 84 S.Ct. 461, 467–68, 11 L.Ed.2d 440 (1964).

 This is an appropriate case for *Pullman* abstention. The state suit at issue seems to be founded on a new cause or causes of action the precise nature and reach of which are not clear. It is appropriate to have the novel issues raised by the Massachusetts complaint construed as a matter of state law before subjecting them to constitutional test. *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645–46. Furthermore, by allowing the state courts to address the state law issues, the court can also avoid the bar potentially raised by *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), to a federal court's consideration of any state-law based arguments the plaintiffs may have against the attorney general. *See Cuesnongle v. Ramos*, 835 F.2d 1486, 1497–98 & nn. 8–9 (1st Cir. 1987).

While acknowledging that *Pullman* abstention is appropriate, the plaintiffs argue that this court should nevertheless decide whether the state claims have been preempted. That is not warranted. There certainly are some good reasons why constitutional and nonconstitutional issues might be addressed differently in an abstention case. *See, e.g., Propper v. Clark*, 337 U.S. 472, 489–90, 69 S.Ct. 1333, 1343–44, 93 L.Ed. 1480 (1949); *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 363–64 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987); *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir.1982). But the First Circuit has

held otherwise, *Druker v. Sullivan*, 458 F.2d 1272, 1274 (1st Cir.1972); *see also Metlakatla Indian Community Annette Island Reserve v. Egan*, 363 U.S. 555, 80 S.Ct. 1321, 4 L.Ed.2d 1397 (1960), and this court must follow that lead.

Consequently, the court will abstain from any further proceedings in this case until informed that the case of *Commonwealth v. Philip Morris*, now presently in the Massachusetts Superior Court, has concluded. To preserve their right to return to this court, the plaintiffs here should indicate "on the state record the 'reservation to the disposition of the entire case by the state courts.'" *England*, 375 U.S. at 421, 84 S.Ct. at 468.[13]

For the foregoing reasons, the attorney general's motion to dismiss is denied.

SO ORDERED.

---

**13.** That is not to say that the plaintiffs are prohibited from raising these federal issues in the state court proceeding. A decision to follow that path, however, will waive their right to pursue the federal case further. *England*, 375 U.S. at 419, 84 S.Ct. at 466–67.