PHILIP MORRIS, INC.; RJ Reynolds Tobacco Co.; Brown & Williamson Tobacco Corporation, USA; Lorillard Tobacco Co., Plaintiffs–Appellants,

v.

Richard BLUMENTHAL, Attorney General, Defendant–Appellee.

No. 1904, Docket 97–7122.

United States Court of Appeals, Second Circuit.

Argued June 26, 1997.

Decided Sept. 12, 1997.

Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City (William R. Murphy, Ben A. Solnit, Tyler Cooper & Alcorn, New Haven, CT, Donald B. Ayer, Jones, Day, Reavis & Pogue, Washington, DC, Edward F. Hennessey, III, David Thomas Ryan, Robinson & Cole, Hartford, CT, David M. Bernick, P.C., Marjorie Press Lindblom, Andrew R. McGaan, Kirkland & Ellis, Chicago, IL, Francis H. Morrison, III, James H. Rotondo, Day, Berry & Howard, Hartford, CT, Gene E. Voigts, John C. Monica, Shook, Hardy & Bacon, LLP, James R. Fogarty, Andrew P. Nemiroff, Lawrence F. Reilly, Epstein Fogarty Cohen & Selby LLC,

Greenwich, CT, of counsel), for Plaintiffs–Appellants.

Richard Blumenthal, Attorney General, Hartford, CT (David S. Golub, Jonathan M. Levine, Silver Golub & Teitell, LLP, Stamford, CT, Gregory T. D'Auria, Assistant Attorney General, Hartford, CT, of counsel), for Defendant–Appellee.

Before: MINER, McLAUGHLIN and JACOBS, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs–appellants Philip Morris, Inc., RJ Reynolds Tobacco Co., Brown & Williamson Tobacco Corporation, USA, and Lorillard Tobacco Co. (the "Tobacco Companies"), appeal from a judgment entered in the United States District Court for the District of Connecticut (Dorsey, C.J.) on an order granting the renewed motion of defendant-appellee Richard Blumenthal, the Attorney General of the State of Connecticut (the "Attorney General" or the "state"), to dismiss the Tobacco Companies' federal action pursuant to the *Younger* abstention doctrine. The district court found that abstention was appropriate because, inter alia, important state interests were implicated in the state's lawsuit seeking injunctive relief and monetary damages for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. Ann. § 42–110a et seq. (West 1992), the Connecticut Antitrust Act, Conn. Gen.Stat. Ann. § 35–24 et seq. (West 1987 & Supp. 1997), and state common law.

For the reasons that follow, we reverse and remand.

## BACKGROUND

The action giving rise to this appeal was initiated in response to various well-publicized threats by the Attorney General to commence an action in state court against companies in the tobacco industry. According to the Attorney General, that action would seek to recover millions of dollars paid out by Connecticut under its Medicaid and general medical assistance programs for tobacco-related illnesses. In 1995, the Attorney General attempted to obtain legislative authorization for a lawsuit against tobacco companies. The Connecticut General Assembly declined to enact legislation authorizing such a suit. The Attorney General again sought authorization in March of 1996, which again was denied by the General Assembly. Notwithstanding the General Assembly's denial of authorization, the Attorney General made clear through the press that he intended to proceed with the legal action.

On June 28, 1996, the Tobacco Companies commenced the instant action to enjoin the state from filing the impending suit in state court (the "federal action"). In their complaint, the Tobacco Companies asserted that "[t]he Threatened Lawsuit seeks to impose upon [the Tobacco Companies] on a retroactive basis massive costs of the Medicaid program that Connecticut has voluntarily chosen to establish, irrespective of traditional principles of law governing the rights and duties of [the Tobacco Companies] with respect to any actual Medicaid recipient." (Compl.¶ 16.) The Tobacco Companies challenged on constitutional grounds aspects of the relief that the state intended to pursue.[1] In particular, they challenged the recovery of Medicaid payments made by Connecticut in connection with illnesses that allegedly are tobacco-related, and they sought to resolve questions about the consequences of their continuing to do business in Connecticut during the pendency of the threatened suit.

Three weeks after the initiation of the federal action, the state filed suit in Connecticut Superior Court against the Tobacco Companies and six other tobacco-related companies and organizations (the "state action"), seeking damages and injunctive relief for alleged violations of the state antitrust law, CUTPA and state common law. The state alleged, *inter alia*, that the tobacco companies had engaged in unfair, deceptive and anti-competitive trade practices to pro-

---

1. The Tobacco Companies asserted in their complaint that the state's lawsuit and interpretation of Connecticut law unconstitutionally burden interstate commerce and violate the Tobacco Companies' rights under the Due Process Clause, Equal Protection Clause, Takings Clause, Supremacy Clause, and First Amendment. They sought a declaration that provisions of Connecticut law, as construed by the state, are unconstitutional.

mote the sale of their product, including (1) a campaign to misrepresent and conceal the ill effects and addictive nature of tobacco use, (2) the manipulation of nicotine levels, (3) the failure to develop a less harmful product and (4) the purposeful marketing to children.

The state sought a number of remedies, including a permanent injunction enjoining the companies from continuing their alleged unfair practices; monetary relief under a variety of theories, including recovery of Connecticut's past and future expenditures for tobacco-related health-care costs under Medicaid and a variety of other programs; and civil penalties under CUTPA and the state antitrust laws. The state also sought the disgorgement of all profits attained through the companies' unfair or deceptive trade practices.

The Tobacco Companies removed the state action to federal court pursuant to 28 U.S.C. § 1441. The state argued that removal was improper due to a lack of subject matter jurisdiction. It then moved to dismiss the federal action on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and to remand the state action to the state court. The motion to dismiss the federal action was denied without prejudice pending a determination in the removed state action on the issue of subject matter jurisdiction. On October 9, 1996, the state action was remanded to state court for lack of subject matter jurisdiction. The state then renewed its motion to dismiss the federal action.

The Tobacco Companies argued that *Younger* abstention was inappropriate in this case and that, if the district court were inclined to abstain, it should do so under the *Pullman* abstention doctrine, *see Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). The district court found that *Younger* abstention was proper and declined to address the applicability of *Pullman.* Accordingly, on December 23, 1996, the district court granted the state's renewed motion to dismiss. Judgment was entered on December 27, 1996. This appeal followed.

## DISCUSSION

We have been counseled frequently by the Supreme Court "that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996). "Abdication of the obligation to decide cases can be justified under [the doctrine of abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1243, 47 L.Ed.2d 483 (1976) (quotation omitted).

■ The state argues that the instant case provides such "exceptional circumstances," and urges abstention under the *Younger* doctrine. Under *Younger,* federal courts may "refrain from hearing cases that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings," *Quackenbush,* —— U.S. at ——, 116 S.Ct. at 1721 (citation omitted), such as civil enforcement proceedings, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975), and proceedings related to the integrity or administration of the state judicial system, *see, e.g., Juidice v. Vail,* 430 U.S. 327, 334–35, 97 S.Ct. 1211, 1216–17, 51 L.Ed.2d 376 (1977) (civil contempt). We have found *Younger* abstention appropriate where "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Town Court,* 56 F.3d 391, 393 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995).

■ There is little question that there is an ongoing state proceeding and that the Tobacco Companies could obtain meaningful review of their federal claims in the state action. However, we do not find that the federal action implicates an important state interest within the meaning of *Younger.*

■ In determining whether the "important state interest" requirement has been

met, we consider whether the state action concerns the central sovereign functions of state government such that "exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 1525, 95 L.Ed.2d 1 (1987). "[W]e do not look narrowly to [the State's] interest in the *outcome* of the particular case," but rather look to "the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989). The burden is on the state to establish that an important state interest is implicated. *See Trainor v. Hernandez*, 431 U.S. 434, 448, 97 S.Ct. 1911, 1920, 52 L.Ed.2d 486 (1977) (Blackmun, J., concurring).

■ In order to ascertain the "generic proceeding" involved in the action brought by the state, we cannot focus solely or chiefly upon the style of the state's pleading, such as the particular causes of action pleaded or statutes invoked. We must consider the underlying nature of the state proceeding on which the federal lawsuit would impinge. For example, in *Pennzoil*, the Supreme Court analogized the bond-posting requirement sought to be enjoined in that case to the state contempt process at issue in *Juidice*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376, and described both of those challenged state proceedings as "processes by which the State compels compliance with the judgments of its courts." 481 U.S. at 13–14, 107 S.Ct. at 1527–28.

In the instant case, the Tobacco Companies seek a federal court injunction prohibiting the state from collecting from them monies expended by the state for treatment of smoking-related illnesses.[2] Although the state pleads its action in state court as an enforcement action pursuant to CUTPA and the state antitrust law to prevent deception and unfair and anticompetitive business practices—arguably important state interests—the underlying claim is more accurately classified as a subrogation action grounded in tort. *See Philip Morris Inc. v. Harshbarger*, 946 F.Supp. 1067, 1077 (D.Mass.1996). Notwithstanding certain other claims, the primary aim of the state is to obtain reimbursement from the tobacco industry for expenditures caused by its allegedly tortious conduct. This purpose has little to do with eradicating unfair trade practices or anticompetitive business practices. *See, e.g., Witham v. ITT Hartford*, No. CV 960132891, 1997 WL 325443, at *1 (Conn.Super.Ct. June 4, 1997) (purpose of CUTPA is to protect consumers from unfair trade practices). A subrogation claim grounded in tort is not a generic proceeding of great importance to the state.

Moreover, as essentially a suit for money damages, it is evident that the state action cannot be characterized accurately as a "sovereign enforcement proceeding." The monetary relief sought by the state also would be available to a private citizen.[3] Connecticut General Statutes § 42–110g provides that any private party may seek to recover actual damages suffered as a result of alleged CUTPA violations (as the state seeks to do in the instant action) and, in its discretion, the court may also award the private party punitive damages and equitable relief. Similarly, while the state is empowered under Connecticut General Statutes § 35–32 to bring actions in the name of the state or as *parens patriae* for violations of the state antitrust laws, and is entitled to recover treble damages, Connecticut General Statutes § 35–35 also entitles private parties to recover treble damages on their own behalf for antitrust

---

**2.** The state disputes that the Tobacco Companies' suit is limited to enjoining the recovery of money expended on Medicaid and other health care costs, because the complaint asks the federal court to enjoin the state "from prosecuting, imposing or enforcing liability pursuant to the Threatened Lawsuit." (Compl.¶ E.) However, read in context, it seems clear that the Tobacco Companies are urging the district court to enjoin on constitutional grounds an action for monetary relief.

**3.** The state also seeks in the state action to recover civil penalties under CUTPA, *see* Conn. Gen. Stat. Ann. § 42–110o(b) (West Supp.1997), and the state antitrust law, *see* Conn. Gen.Stat. Ann. § 35–38 (West 1987). However, these claims do not affect the nature of the state action, which primarily is to seek reimbursement of health care expenditures.

violations. Thus, on its face, the state action does not appear to differ greatly from a private action under CUTPA, and the mere fact that the state is involved as a party does not transform the action into a "sovereign enforcement" proceeding. *See Cate v. Oldham,* 707 F.2d 1176, 1183 (11th Cir.1983); *see also Moore v. Sims,* 442 U.S. 415, 423 n. 8, 99 S.Ct. 2371, 2377 n. 8, 60 L.Ed.2d 994 (1979) (that the state is a party to an action does not itself make *Younger* abstention appropriate).

The state argues that *Trainor* mandates *Younger* abstention when a state seeks to recover money for one of its public assistance programs. *See* 431 U.S. at 444, 97 S.Ct. at 1917. However, the state action in *Trainor* differs significantly from the instant case. In *Trainor,* the appellees fraudulently concealed assets when applying for welfare benefits. The state instituted a civil action to recoup the benefit payments made to appellees. The Court found that *Younger* abstention was appropriate in that case because the state's suit was brought "to vindicate important state policies such as safeguarding the fiscal integrity of [its public assistance] programs." *Id.* Moreover, the underlying civil claim in *Trainor* sought to vindicate some of the same interests that the state might have elected to pursue in a criminal prosecution. *See id.* (plurality), 431 U.S. at 449, 97 S.Ct. at 1920(Blackmun, J., concurring); *Harshbarger,* 946 F.Supp. at 1077.

The instant case does not involve a threat to the "fiscal integrity" of Connecticut's Medicaid program because no fraud has been committed against that program. There is no suggestion that any individual who received Medicaid benefits in relation to a tobacco-related illness was not entitled to those benefits. The mere fact that conduct results in expense to a state program is not enough to bring an action to terminate that conduct within the scope of *Trainor.* Nor can every initiative by a state to improve fiscal soundness by getting money be deemed a safeguard of "fiscal integrity." This action, like a subrogation action, primarily concerns the apportionment of loss based upon theories of tort liability—who should be responsible for paying for the injuries suffered by those who contracted tobacco-related illnesses. It bears little relation to the state's administration of its Medicaid or general assistance program and does not implicate the programs' "fiscal integrity." Therefore, *Trainor* does not compel us to abstain under the *Younger* doctrine.

### CONCLUSION

For the foregoing reasons, the decision of the district court is reversed and remanded. Upon remand, the district court, in its discretion, may consider whether abstention is appropriate under the *Pullman* doctrine.