**Gad GRIEVE, Plaintiff–Appellant,**

v.

**Elisheva TAMERIN, Defendant–Appellee.**

**No. 00–9271.**

United States Court of Appeals, Second Circuit.

Argued April 18, 2001.

Final Submission Aug. 13, 2001.

Decided Oct. 17, 2001.

---

Robert D. Arenstein, New York, NY, for Defendant–Appellee.

Nathan Lewin, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Washington, DC, for Plaintiff–Appellant.*

Before LEVAL, SACK, and SOTOMAYOR, Circuit Judges.

SACK, Circuit Judge:

This appeal arises from a child custody dispute between the plaintiff Gad Grieve and his former wife, the defendant Elisheva Tamerin. The district court's memorandum and order sets forth in some detail the facts relevant to this appeal. *See Grieve v. Tamerin*, No. 00–CV–3824 (JG), 2000 WL 1240199, 2000 U.S. Dist. LEXIS 12210 (E.D.N.Y. Aug.25, 2000) (*"Grieve I "*). We recite them here only to the extent necessary to explain our disposition of this appeal.

In Israel in 1995, Grieve, a citizen of South Africa and permanent resident of Israel, married Tamerin, a dual citizen of Israel and the United States. On April 16, 1996, their only child Simcha was born. In September 1997, a rabbinical court granted Grieve and Tamerin a divorce. Under a private agreement between Grieve and Tamerin, Grieve enjoyed primary custody of Simcha, and Tamerin had visitation rights.

On December 19, 1999, Grieve took Simcha with him to England and then, one month later, to New York. Grieve maintains that he intended to stay in New York briefly; Tamerin asserts that Grieve planned to resettle here. The parties also dispute whether Grieve told Tamerin of his plans beforehand and, if he did, whether the custody agreement or Israeli law permitted such travel.

In March 2000, Tamerin came to New York and initiated a habeas corpus proceeding in New York Supreme Court, Kings County, seeking custody of Simcha. On March 29, 2000, that court (Gerald P. Garson, *Justice* ) awarded her temporary custody pending its final resolution of the dispute. It also granted Grieve supervised visitation rights. On May 23, 2000, Grieve, represented by counsel, appealed this temporary custody order to the New York State Supreme Court Appellate Division, Second Department, on the ground that Supreme Court, Kings County, lacked jurisdiction.

On June 24, 2000, Grieve, now acting *pro se*, initiated a separate action in the United States District Court for the Eastern District of New York. Invoking the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 ("Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–10 ("ICARA"), he sought custody of Simcha and a stay of the state court proceedings. *See Grieve I,* 2000 WL 1240199, at *1, 2000 U.S. Dist. LEXIS 12210, at *2.

With Grieve again represented by counsel, Tamerin moved to dismiss the action on *Younger* abstention grounds. On August 25, 2000, following oral argument, the district court (John Gleeson, *Judge* ) granted Tamerin's motion. *See Grieve I,* 2000 WL 1240199, at *4, 2000 U.S. Dist. LEXIS 12210, at *11. The court concluded that abstention was proper because of New York State's "strong interest in domestic relations matters generally and child custody questions in particular," *id.* at *3, 2000 U.S. Dist. LEXIS 12210, at *8, and because Grieve would have a full and fair opportunity to litigate his federal claims under the Hague Convention and the

---

* The plaintiff filed this appeal and pre-argument briefs in support thereof *pro se*. Mr. Lewin conducted oral argument and filed post-argument briefs on the plaintiff's behalf.

ICARA in state court. *See id.* at *3, 2000 U.S. Dist. LEXIS 12210, at *8–*9.

Five days later, acting *pro se,* Grieve filed a new action in the United States District Court for the Southern District of New York seeking substantially the same relief on substantially the same grounds as he had in his action in the Eastern District, but this time in the form of a petition for a writ of habeas corpus. He sought an expedited proceeding. Tamerin again moved to dismiss on, *inter alia, Younger* abstention grounds. *See Grieve v. Tamerin,* No. 00–CV–6543 (AGS), 2000 WL 1364366, 2000 U.S. Dist. LEXIS 13576 (S.D.N.Y. Sept. 21, 2000) (*"Grieve II"*). Meanwhile, on September 11, 2000, Grieve wrote a letter to the New York State Appellate Division, Second Department, withdrawing his appeal of Justice Garson's temporary custody order.

On September 19, 2000, before Tamerin's motion to dismiss the Southern District action had been decided, Justice Garson entered a judgment in the state-court action rejecting Grieve's Hague Convention and ICARA claims on the merits. The court held the Convention inapplicable where, as here, the non-custodial parent has neither removed the child from his habitual place of residence nor retained him illegally in a foreign jurisdiction.

Two days later, the district court (Allen G. Schwartz, *Judge*) ruled on Tamerin's motion to dismiss the Southern District action as follows:

> For the reasons set forth in the Memorandum and Order of Judge Gleeson [*Grieve I*], which are adopted as if fully set forth herein, this Court dismisses the action pursuant to the doctrine of *Younger* abstention.

*Grieve II,* 2000 WL 1364366, at *2, 2000 U.S. Dist. LEXIS 13576, at *4. Judge Schwartz also noted that the action would be "subject to dismissal under the doctrine

of *res judicata* " based on the decision on the merits of the Hague Convention and ICARA claim by the state court. *See id.* at *2 n. 2, 2000 U.S. Dist. LEXIS 13576, at *4 n. 2. Grieve did not appeal.

The state court thereafter further considered Tamerin's application and, on November 13, 2000, awarded her permanent custody of Simcha. Finally, on December 19, 2000, Judge Gleeson denied Grieve's *pro se* motion for reconsideration of the court's decision to abstain on *Younger* grounds in the Eastern District action. Grieve, with the assistance of counsel at oral argument and thereafter, appeals the judgment of dismissal in that action.

## DISCUSSION

The requirements for a federal court to abstain from exercising jurisdiction under *Younger* are that "1) there [be] an ongoing state proceeding; 2) an important state interest [be] implicated; and 3) the plaintiff ha[ve] an avenue open for review of constitutional claims in the state court." *Philip Morris, Inc. v. Blumenthal,* 123 F.3d 103, 105 (2d Cir.1997) (quoting *Hansel v. Town Court,* 56 F.3d 391, 393 (2d. Cir.), *cert. denied,* 516 U.S. 1012, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995)), *cert. denied,* 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998). A state interest is "important" for purposes of the second *Younger* abstention factor where "exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). In this Circuit, resolution of this question turns on whether "the state action concerns the central sovereign functions of state government." *Philip Morris,* 123 F.3d at 106. A state plainly has an interest in the outcome of a child custody dispute adjudicated in its

courts. Yet New York's resolution of a custody battle is not so bound up with the State's sovereign functions as to be "important" in the comity-related sense in which the *Younger* cases use the term. *See Philip Morris,* 123 F.3d at 106 (holding that a tort subrogation action does not implicate the state's enforcement mechanisms); *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (cautioning that although the *Younger* doctrine has been expanded to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," it should nonetheless be exercised only in exceptional circumstances).

Moreover, Grieve's claim implicates a paramount federal interest in foreign relations and the enforcement of United States treaty obligations. Deference to a state court's interest in the outcome of a child custody dispute would be particularly problematic in the context of a Hague Convention claim inasmuch as the Convention divests the state of jurisdiction over these custody issues until the merits of the Hague Convention claim have been resolved. *See* 42 U.S.C. § 11601(b)(4); *see also March v. Levine,* 249 F.3d 462, 468 (6th Cir.2001). New York State's interest does not, then, appear to raise the sort of substantial comity concerns that require *Younger* abstention.

We are nonetheless constrained to affirm the judgment of the district court. The Southern District's decision in Grieve's action there, a final judgment on the merits subject to no further review holding that, once the Hague Convention had been raised in the state court litigation, *Younger* required the court's abstention from further adjudication of Grieve's Convention-based claims, collaterally estops the plaintiff from further asserting the contrary here.

■■■ The doctrine of collateral estoppel (or "issue preclusion") bars relitigation of a specific legal or factual issue in a second proceeding where " '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.' " *United States v. Hussein,* 178 F.3d 125, 129 (2d Cir.1999) (quoting *In re PCH Assocs.,* 949 F.2d 585, 593 (2d Cir.1991)). The Eastern District action and the Southern District action involved the same parties and substantially the same claims. *See Grieve II,* 2000 WL 1364366, at *2, 2000 U.S. Dist. LEXIS 13576, at *4 ("The Complaint in this action seeks the same or substantially the same relief as that sought in [the Eastern District action]."). The two cases present precisely the same *Younger* abstention issue. The plaintiff actually litigated that issue in the Southern District action, and after oral argument that court decided it against him on the merits. *See id.* at *2, 2000 U.S. Dist. LEXIS 13576, at *4 (adopting Judge Gleeson's *Younger* analysis in *Grieve I* "as if fully set forth herein").

The district court in the Southern District action held that once Grieve had advanced his Hague Convention claim in the state court litigation, the *Younger* doctrine called for a federal court in a parallel proceeding to abstain from adjudicating the same claim. Upon Grieve's failure to appeal, that decision became final. It was applicable to the Eastern District action, as well as to the Southern District action in which it was rendered. If the Southern District action had been brought first and had been finally adjudicated before the

Eastern District action was brought, Grieve could not have started again, advancing his Hague Convention claim in a new action in the Eastern District. The effect of the Southern District's final judgment was no different simply because the Eastern District action was the first to be ruled on at the district court level. When the Southern District's judgment became final and subject to no further review, finally determining the propriety of a federal court's abstention in favor of the state court's adjudication, it conclusively established that principle between the parties. That principle accordingly governs this appeal of the as-yet-not-finally-adjudicated Eastern District action.

Grieve was afforded the opportunity both to attempt to persuade the Southern District of the impropriety of *Younger* abstention and to appeal the court's adverse ruling. He did not appeal. He now argues that he did not have a full and fair opportunity to appeal because the district court told him in informal colloquy that his only opportunity for relief was to appeal the Eastern District ruling. Grieve has provided no transcript of or citation to the alleged statement. Assuming it was said, however, the fact that the Southern District, in addition to making an erroneous ruling, also made an erroneous observation in colloquy does not relieve Grieve from his failure to appeal its ruling. If Grieve wished to contend that the district court was wrong, his remedy was to appeal. When he failed to do so, the Southern District's decision became final and, by operation of collateral estoppel, conclusive on the issue of *Younger* abstention in the Eastern District action also.

 We recognize that, ordinarily, collateral estoppel must be raised as an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure. *See Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir.1999). Here, however, the possibility of collateral estoppel arose only *after* Tamerin had filed her answer in the Eastern District action and the complaint in that action had been dismissed. Tamerin can therefore hardly be faulted for not pleading collateral estoppel in her answer to Grieve's complaint in the Eastern District action, the action presently before us on appeal. It is well established that "[w]e need not affirm for the reasons expressed by the district court but may affirm on any ground supported by the record." *McNally Wellman Co. v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1194 (2d Cir.1995) (citing *Revak v. SEC Realty Corp.,* 18 F.3d 81, 83 (2d Cir.1994)). We therefore affirm based on principles of collateral estoppel.

This result may seem harsh; to some extent, it may be a product of Grieve's lack of knowledge of the law and his choice not to employ counsel in the Southern District action. But principles of preclusion involve more than the rights and interests of the parties. They also serve important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions. *See Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir.1998) (affirming the district court's decision to raise collateral estoppel *sua sponte* in view of considerations of efficient judicial economy); *see also* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4405 (1981 & Supp.2001) (collecting cases).

Finally, we note that Tamerin makes a colorable assertion that because Supreme Court, Kings County, explicitly decided the Hague Convention issue between the parties, we are bound by that decision under principles of *res judicata.* In *Grieve II,* the district court explained:

> This Court has ... received from Tamerin's counsel a copy of an order dated September 19, 2000 by Justice

Garson in the State Court Action. In that order, Justice Garson considers Grieve's Hague Convention application and denies it on the merits. Accordingly, this action is also subject to dismissal under the doctrine of *res judicata.*

2000 WL 1364366, at *2 n. 2, 2000 U.S. Dist. LEXIS 13576, at *4, n. 2. We do not, however, affirm on this ground. We therefore neither express nor imply a view as to whether principles of *res judicata,* or of collateral estoppel arising from the *Grieve II* court's footnoted suggestion to this effect, foreclose Grieve's Hague Convention claim.

## CONCLUSION

The judgment of the district court is affirmed.