**Amalin HAZBUN ESCAF, Petitioner,**

v.

**Isidoro RODRIQUEZ,[1] Respondent.**

**No. CIV.A.01–1926–A.**

United States District Court,
E.D. Virginia.
Alexandria Division.

March 21, 2002.

---

1. The caption of the complaint lists respondent's name as "Rodriquez" with a "q," but all other pleadings spell the name "Rodriguez" with a "g". The more common "Rodriguez" spelling will be used here in all instances except in the caption.

Patrick Hanley Stiehm, Stiehm Law Office, Alexandria, VA, Stephen J. Cullen, Miles & Stockbridge P.C., Towson, MD, for Plaintiffs or Petitioners.

Isidoro Rodriguez, Law Offices of Isidoro Rodriguez, Alexandria, for Defendants or Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

Amalin Hazbun Escaf brought this suit under the Hague Convention on the Civil Aspects of International Child Abduction [2] (Hague Convention) and the International Child Abduction Remedies Act [3] (ICARA) to secure the return of her son to Colombia from the keep of Isidoro Rodriguez Cruz, the child's father. Central to the resolution of the pending motion is whether the *Younger* [4] or *Colorado River* [5] abstention doctrines counsel that this case be stayed or dismissed [6] in favor of a child custody matter pending in Virginia state court, in which the Hague Convention issue has not been formally raised.

### I. [7]

The child in issue here is Isidoro Rodriguez Hazbun, a thirteen-year-old boy born in Barranquilla, Colombia [8] on March 10, 1989 to petitioner Amalin Hazbun Escaf (Hazbun), a citizen and resident of Colombia, and her then husband, respondent Isidoro Rodriguez Cruz (Rodriguez), an American citizen now residing in Virginia. [9] For approximately six years, the family resided in Barranquilla, making occasional trips to the United States. Then, in 1995, Hazbun and Rodriguez separated, ultimately divorcing in 1997. During the period of the separation, the child, Isidoro, resided chiefly with Hazbun in Barranquilla. In two separate decrees issued in Au-

---

**2.** Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, 1988 WL 411501 (entered into force Dec. 1, 1983; for the United States July 1, 1988; for Colombia March 1, 1996; between Colombia and the United States June 1, 1996).

**3.** 42 U.S.C. § 11601 et seq. The statute implements the Hague Convention in the United States and specifically states that its provision "are in addition to and not in lieu of the provisions of the Convention." 42 U.S.C. § 11601(b)(2).

**4.** *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**5.** *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**6.** *Younger* abstention contemplates the dismissal of the federal suit and the presentation of all claims to the state court. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *Colorado River* abstention may result either in a stay or outright dismissal of the federal suit, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 13–16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), but in either case the state court decision will have preclusive effect. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 283–85, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

**7.** It is proper to consider matters outside the pleadings for purposes of a motion to dismiss that is based on (i) a challenge to the Court's subject matter jurisdiction; (ii) failure to join a necessary and indispensable party; or (iii) abstention. *See* Fed.R.Civ.P. 12(b); *Hammond v. Clayton,* 83 F.3d 191, 192 (7th Cir. 1996). Accordingly, the facts recounted here are those uncontested facts taken from the pleadings and accompanying affidavits.

**8.** The child is an American citizen by virtue of his father's citizenship.

**9.** Rodriguez worked for many years in Colombia and maintains law offices in Alexandria, Virginia and Barranquilla, Colombia.

gust 1997, several months before the divorce, the Family Court of Barranquilla, Colombia approved a custody agreement in which the child would reside with and be primarily in the care of Hazbun, but would spend every other weekend with Rodriguez.[10] The summer holidays were to be divided evenly with Isidoro spending equal time with each parent. Both parents were to share the right and responsibility for the education and the moral and intellectual upbringing of their child. In this regard, Rodriguez was to retain certain responsibilities for taking Isidoro to evening sports practices and academic lessons. The Barranquilla Family Court clarified in a second order that Hazbun retained formal custody of Isidoro.[11]

It appears from the record that some time after the divorce Rodriguez began to spend most of his time in Virginia, and Isidoro made annual trips to this country during the summer to spend time with his father in Virginia. During the last of these trips, in June and July of 2001, Isidoro allegedly determined that he wanted to stay in the United States and not return to Colombia. Since then, Isidoro has remained in the United States in the care of Rodriguez and in violation of the custody orders of the Barranquilla Family Court.

In July 2001 Isidoro filed suit against his mother in the Fairfax County Juvenile and Domestic Relations Court[12] to modify the custody agreement between Hazbun and Rodriguez based on a material change of circumstance. Specifically, the petition seeks an order that Rodriguez be granted sole custody of Isidoro and that Isidoro not be required to return to Colombia. In turn, Hazbun filed this suit against Rodriguez on December 20, 2001 seeking return of the child under ICARA and the Hague Convention. Rodriguez has now filed a motion to dismiss (i) for lack of subject matter jurisdiction,[13] (ii) for failure to join the child as an indispensable party,[14] and (iii) for abstention pursuant to *Younger*.[15]

## II.

The Hague Convention establishes legal rights and procedures for the prompt return of children who have been "wrongfully removed to or retained in" a nation that is a party to the Convention. Hague Convention, art. 1; 42 U.S.C. § 11601(a). The nations that adopted the Hague Convention sought "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, preamble. Thus, the primary purpose of the Hague Convention is "to preserve the status quo" with respect to child custody and to deter feuding parents from "crossing international boundaries in search of a more sympathetic [custody] court." *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001). The scope of a court's inquiry under the Hague Convention is limited to the merits of the claim for wrongful removal

---

**10.** *See Amalin Hazbun Escaf v. Isidoro Rodriguez Cruz* (First Family Court, Barranquilla, Colombia Aug. 1, 1997).

**11.** *See Amalin Hazbun Escaf v. Isidoro Rodriguez Cruz*, Ref. No. 23.833 (First Family Court, Barranquilla, Colombia Aug. 26, 1997).

**12.** *Isidoro Rodriguez–Hazbun v. Amalin Hazbun Escaf*, Case No. JJ–347–050–01–01 (Juv. & Dom. Rel. Ct. of Fairfax Cty, filed July 13, 2001).

**13.** *See Rule 12(b)(1), Fed.R.Civ.P.*

**14.** *See Rules 12(b)(7) & 19, Fed.R.Civ.P.*

**15.** Also pending is Rodriguez's motion for Rule 11 sanctions. Given the resolution of the underlying motion to dismiss, the motion for sanctions is without merit and must be denied.

or retention. *See* 42 U.S.C. § 11601(b)(4); Hague Convention, art. 16. Accordingly, the merits of any underlying custody case are not at issue. *See Miller*, 240 F.3d at 398; Hague Convention, art. 19.[16]

ICARA, enacted in 1988, established procedures for the implementation of the Hague Convention in the United States. In this regard, it defined and allocated the burdens of proof for various claims and defenses under the Hague Convention. *See* 42 U.S.C. § 11601 *et seq.*[17] Specifically, ICARA requires that a petitioner under the Hague Convention establish, by a preponderance of the evidence, that the child whose return is sought has been "wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). Thus, in this matter, Hazbun must prove by a preponderance of the evidence (i) that her child was habitually resident in Colombia at the time Rodriguez retained the child in the United States; (ii) that the retention was in breach of Hazbun's custody rights under Colombian law, and (iii) that she had been exercising those custody rights at the time of retention. *See Miller*, 240 F.3d at 398; Hague Convention, art. 3.

A respondent opposing the return of a child may prevail if he or she establishes certain defenses designated by ICARA and available under the Convention.[18] Thus, Rodriguez might prevail in this matter if he establishes by clear and convincing evidence (i) that there is a grave risk that returning the child to Hazbun in Colombia would expose the child to physical or psychological harm or otherwise place him in an intolerable situation,[19] or (ii) that the return of the child to Colombia would not be permitted by the fundamental principles of the United States "relating to the protection of human rights and fundamental freedoms."[20] Rodriguez also might prevail if he establishes by a preponderance of the evidence that Hazbun "was not actually exercising the custody rights at the time of ... retention,"[21] or if it is shown that "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [his] views."[22]

There is an important distinction, often overlooked, between a Hague Convention petition brought pursuant to ICARA and a petition to determine the legal custody of a minor. To be sure, a Hague Convention petition affects custody, but it is not a custody determination. *See* Hague Convention, art. 19. And signifi-

---

16. Although some of the defenses to the return of a child under the Hague Convention raise issues that may mirror those in a custody dispute, *see e.g.*, Hague Convention, art. 13(b) (a court is not bound to order return if it would expose the child to grave risk of physical or psychological harm), the purpose of the Hague Convention proceeding is not to determine the best interests of the child, as is true in a custody dispute. *See infra* notes 30, 31, & 36 and accompanying text.

17. Cases brought pursuant to ICARA and the Hague Convention are tried to a judge, as neither ICARA nor the Hague Convention provides for trial by jury and the available remedy—return of the child—is equitable in nature. *See Silverman v. Silverman*, 2002 WL 264932 (D.Minn. Feb 21, 2002).

18. *See* 42 U.S.C. § 11603(e)(2)(A) (requiring proof, by clear and convincing evidence, that one of the exceptions set forth in article 13b or 20 of the Hague Convention applies); 42 U.S.C. § 11603(e)(2)(B) (requiring proof, by a preponderance of the evidence, that some other exception set forth in article 12 or 13 of the Hague Convention applies).

19. Hague Convention, art. 13b.

20. Hague Convention, art. 20.

21. Hague Convention, art. 13a.

22. Hague Convention, art. 13, ¶ 2.

cantly, the Hague Convention, which is the "Law of the Land," [23] specifically directs that courts "shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention." Hague Convention, art. 16. The intention and effect of the Hague Convention, then, is to "lend priority to the custody determination hailing from the child's state of habitual residence." *Miller*, 240 F.3d at 399. Thus, a state court of competent jurisdiction may proceed to determine legal custody only where that court or a federal district court first finds that the petitioner cannot prove wrongful removal or retention or where the respondent establishes one of the available affirmative defenses.

## III.

The first two grounds cited in Rodriguez's motion to dismiss, namely lack of subject matter jurisdiction and failure to join a necessary and indispensable party, are without merit. With respect to the first ground, Rodriguez confuses jurisdiction with the merits of the petition for the child's return: Each of his arguments goes to the merits of the Hague Convention petition rather than to the issue of jurisdiction. With respect to the second ground, it is clear from the Hague Convention and ICARA that the child whose return is sought is not a necessary party to the judicial proceedings.

### A. Subject Matter Jurisdiction

Rodriguez makes six contentions in support of his argument that this Court lacks subject matter jurisdiction to decide the Hague Convention petition. Each of the first five contentions [24] relates to an element of proof required either of the petitioner who seeks a child's return or of the respondent who opposes that return. Each contention will, at the proper time, be the subject of factfinding in determining the merits of the petition, but none relates to the Court's power to adjudicate the merits.

The sixth contention—that the Court lacks authority to order the return of the child unless the requirements of Virginia domestic relations law have been satisfied—is based on a mistaken interpretation of § 11604 of ICARA. [25] That sec-

---

23. U.S. Const. art. VI, cl. 2 ("This Constitution, ... and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.")

24. Rodriguez's first five contentions are:
   1. that the "habitual residence" of the child is the Commonwealth of Virginia, not Colombia, *see* 42 U.S.C. § 11603(e)(1)(A); Hague Convention, art. 3a;
   2. that Hazbun was not actually exercising the custody rights under the custody agreement, *see* Hague Convention, art. 13a;
   3. that the child would be in grave risk of physical or psychological harm if returned to Colombia, *see* Hague Convention, art. 13b;

4. that the Court should respect the wishes of the child that he not be returned in light of his age and maturity, *see* Hague Convention, art. 13, ¶2; and
5. that the return of the child would not be permitted by the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms, *see* Hague Convention, art. 20.

25. *See* 42 U.S.C. § 11604, which reads in relevant part:
   (a) Authority of courts
   [A]ny court exercising jurisdiction of an action brought under section 11603(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

tion is concerned with provisional remedies "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). The requirement in § 11604(b) that the strictures of state law must be satisfied before ordering the removal of a child from a person having physical control of the child relates only to *provisional* measures that a court may take, not to the final disposition of the petition. Simply put, § 11604 establishes a prerequisite for certain provisional remedies; it does not address jurisdiction to adjudicate a Hague Convention petition. Instead, ICARA explicitly provides that United States district courts and the courts of the states "shall have concurrent original jurisdiction of actions arising under the [Hague] Convention." 42 U.S.C. § 11603(a). A petition for return of a child is properly heard by "any court which has jurisdiction ... in the place where the child is located at the time the petition is filed." *Id.* § 11603(b). Given that the child was residing within this division at the time the petition was filed, subject matter jurisdiction exists here.[26]

## B. Indispensable Party

Whether a party is indispensable requires a two-step inquiry. *See* Rule 19, Fed.R.Civ.P.; *Owens–Illinois Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.1999). First, it must be determined whether a party is "necessary" pursuant to Rule 19(a). *See Owens–Illinois*, 186 F.3d at 440. And second, if a necessary party cannot be joined for some reason, it must be determined whether the party is "indispensable" to the case, in that the party's appearance is so essential that the case must be dismissed. *Id.*

A party is necessary under Rule 19(a) if the party's presence is needed to afford "complete relief to those already parties." Rule 19(a)(1). Given this, it is clear that joinder is inapplicable here because complete relief can be afforded among those persons already parties to the suit. This is so because a Hague Convention petition brought pursuant to ICARA concerns only the rights of those claiming custody of a child,[27] in this case Hazbun and Rodriguez. Any relief ordered here under the Hague Convention and ICARA will be directed solely to Hazbun or Rodriguez, not to Isidoro. Thus, if Hazbun prevails on her petition, Rodriguez will be ordered to return Isidoro to Hazbun in Colombia, whereas if Rodriguez prevails, he will not be ordered to return Isidoro to Colombia and he will then have an opportunity to pursue his change of custody remedy in an appropriate state court. Of course, this does not mean that a child who is the object of a Hague Convention and ICARA suit has no role to play in that suit. In appropriate circumstances, the rights and wishes of the child may be considered during the proceeding,[28] but it does not follow that the child is a necessary party to the

---

(b) Limitation on authority
No court exercising jurisdiction of an action brought under section 11603(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.

26. Rodriguez mistakenly relies on *Miller* in support of his jurisdictional argument. There, the Fourth Circuit affirmed a district court's exercise of jurisdiction to order the return of a child to Canada pursuant to a Hague Convention petition. *Miller*, 240 F.3d at 403. *Miller* provides no support for Rodriguez's position.

27. *See* 42 U.S.C. §§ 11601–11604; Hague Convention, *passim.*

28. *See* 42 U.S.C. § 11603; Hague Convention, arts. 13, 20,

proceeding. Accordingly, Rodriguez's motion to dismiss on this ground must fail.

## IV.

Rodriguez's request for dismissal based on abstention meets the same fate. Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Yet, the Supreme Court has fashioned a number of abstention doctrines based upon the federal courts' prerogative to withhold equitable or quasi-equitable forms of relief, such as the relief sought here. The legal principles governing these abstention doctrines are well settled and "begin with the fundamental proposition that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Richmond, Fredericksburg & Potomac RR Co. v. Forst,* 4 F.3d 244, 251 (4th Cir.1993) (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). Of the various abstention doctrines, two are relevant here: *Younger* abstention and *Colorado River* abstention.

### A. Younger *Abstention*

■ The *Younger* abstention doctrine is designed to preserve comity between the national government and the states by precluding federal court proceedings when the federal claims "have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Cinema Blue of Charlotte v. Gilchrist,* 887 F.2d 49, 52 (4th Cir.1989). Accordingly, the exercise of *Younger* abstention is appropriate only where three conditions are met: (i) where there is an ongoing state judicial proceeding, (ii) where the proceeding implicates important

state interests, and (iii) where there is an adequate opportunity to present the federal claims in the state proceeding. *Employers Res. Mgmt. Co. v. Shannon,* 65 F.3d 1126, 1134 (4th Cir.1995). A state interest is important for purposes of the second *Younger* abstention factor where "exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

■ The first requirement for *Younger* abstention appears to be satisfied here as there is an ongoing state judicial proceeding—the child's custody petition pending in Fairfax County Juvenile and Domestic Relations Court—in which the federal claim under ICARA and the Hague Convention could be raised. Although the Hague Convention claim has not been formally asserted in the state court petition, this is not conclusive because it matters only whether the claim *"could be raised"* in the state proceeding. *See Cinema Blue,* 887 F.2d at 52 (emphasis added). And in this respect, it appears the Hague Convention claim *could* be raised in that court given that state courts have original jurisdiction (concurrently with federal courts) over claims brought under ICARA and the Hague Convention. *See* 42 U.S.C. § 11603(a).[29]

The other two *Younger* factors, however, counsel against abstention in this case. First, there is substantial doubt that Hazbun will have an adequate opportunity to raise her Hague Convention claim in the state proceeding, as the claim currently is not formally before the state court and the proceedings currently scheduled in that court concern only the merits of the state custody dispute. More significantly, the

---

**29.** Juvenile and Domestic Relations courts in Virginia have jurisdiction over matters involving "control or disposition" of a child where custody or visitation is in controversy, *see* Va.Code § 16.1–241, which would arguably encompass a Hague Convention petition.

*Younger* requirement that the federal proceeding implicates important state interests is plainly not met here and abstention should fail on that basis alone. Although a state has a manifest interest in the outcome of a child custody dispute adjudicated in its courts,[30] the resolution of a custody dispute is not at issue in a Hague Convention petition. Rather, such a petition addresses only the propriety of the removal or retention of a child across national boundaries, and thus implicates an important *federal* interest in foreign relations and the enforcement of United States treaty obligations. Deference to a state court's interest in a custody dispute is especially problematic in the context of a Hague Convention claim because ICARA and the Convention explicitly "divest[ ] the state of jurisdiction over ... custody issues until the merits of the Hague Convention claim have been resolved."[31] To address the custody dispute before the Hague Convention petition is resolved would violate the direction of the Hague Convention that courts "shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention." Hague Convention, art. 16. Accordingly, the state court's interest in the custody matter does not arise until the Hague Convention and ICARA issues have been decided. It follows that no substantial comity concerns exist in the instant circumstances and *Younger* abstention is not warranted.

Federal courts of appeals addressing this issue have reached the same result.[32] District court results, however, are not uniform.[33] But those reaching a contrary result are either distinguishable on their facts or unpersuasive on their reasoning.[34]

In the end, while there is little doubt that the state court would be a competent forum in which to raise the Hague Convention claims, those claims are now properly before this Court and the state's substantial interest in the custody dispute is a question that must await resolution of the

---

**30.** *See Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (recognizing that family relations are a traditional area of state concern).

**31.** *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir.2001) (citing 42 U.S.C. § 11601(b)(4)); Hague Convention, art. 16; *see also Miller*, 240 F.3d at 398.

**32.** *See Grieve*, 269 F.3d at 153 (state interests in custody issues do not raise substantial comity concerns that require *Younger* abstention); *Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir.2001) ("abstention principles do not permit an outright dismissal of a Hague petition").

**33.** *See, e.g., Friedrich v. Thompson*, No. 99CV00772, 1999 U.S. Dist. LEXIS 21305 at *8–*10 (M.D.N.C. Nov. Nov. 26, 1999) (finding no basis for abstention). *But see Cerit v. Cerit*, 188 F.Supp.2d 1239 (D.Haw.2002) (abstaining under *Younger* and *Colorado River*); *Bouvagnet v. Bouvagnet*, No. 01 C 4685, 2001 WL 1263497 (N.D.Ill. Oct.22, 2001) (abstaining under *Younger*); *Grieve v. Tamerin*, No. 00–CV–3824 JG, 2000 WL 1240199 (E.D.N.Y. Aug.25, 2000) (abstaining under *Younger*), *aff'd on other grounds, Grieve*, 269 F.3d 149 (2d Cir.2001).

**34.** *Cerit* is distinguishable because the Hague Convention issue there had been squarely presented and substantially argued in the state court proceeding. The federal district court found that the petitioner had selected the state court as the forum for bringing his Hague Convention petition. *See Cerit*, 188 F.Supp.2d at ——––, ———, 2002 WL 340835 at *3–*4, *6–*7. To the extent that the district courts in *Cerit, Bouvagnet* and *Grieve* found that an important state interest was implicated in a Hague Convention petition because of the state's concern with domestic relations, they inappropriately disregarded ICARA's and the Hague Convention's mandate that a decision on the Hague Convention petition be rendered prior to and without regard to the merits of any underlying child custody claims. *See* 42 U.S.C. § 11601(b)(4); Hague Convention, art. 16; *Grieve*, 269 F.3d at 153.

Hague Convention claim before it can properly be addressed.

## B. Colorado River *Abstention*

■ The *Colorado River* abstention doctrine allows a district court to abstain from adjudicating a controversy before it in favor of parallel state proceedings only under "exceptional" circumstances "for reasons of wise judicial administration." *Colorado River,* 424 U.S. at 817–18, 96 S.Ct. 1236. Before determining that abstention is warranted, a district court must first determine whether the state and federal proceedings are parallel. *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.,* 946 F.2d 1072, 1073 (4th Cir.1991). Suits are considered parallel if "substantially the same parties litigate substantially the same issues in different forums." *Id.* This suit and the suit in Fairfax County Juvenile and Domestic Relations Court do not qualify as parallel proceedings in either respect; neither the parties nor the issues are substantially the same. Because the child, not the father, is the petitioner in the state court suit, the father is not a party to that suit. This is significant because Hague Convention relief in this case will be directed to the parents, not the child. Further, because this suit concerns *only* ICARA and the Hague Convention, but not the underlying custody dispute, the issues in the two suits are not substantially the same. Accordingly, the threshold test for the exercise of *Colorado River* abstention—the existence of parallel proceedings—is not met here.

■ Assuming, *arguendo,* the contrary, *Colorado River* abstention would nonetheless be unwarranted here. Even where state and federal proceedings are parallel, a court must consider and balance several factors to determine whether it is proper to abstain. The factors include (i) the assumption by either court of jurisdiction over property; (ii) the inconvenience of the federal forum; (iii) the desire to avoid piecemeal litigation; (iv) the order in which jurisdiction was obtained; and (v) the source of applicable law. *New Beckley,* 946 F.2d at 1073–74 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236). If the balance of factors weighs against abstention, the federal suit should proceed despite the existence of parallel proceedings.[35]

The first factor is irrelevant, as there is no property over which to assume jurisdiction. The second factor, the convenience or inconvenience of the federal forum, is neutral, as the federal and state courts are in close geographic proximity and both are equally distant and inconvenient for Hazbun. The third factor, the desire to avoid piecemeal litigation, does not arise because the issues in the two proceedings are not congruent.[36] The fourth factor, the order in which jurisdiction was obtained, favors the federal forum as the Hague Convention question is not before the state court. Finally, the fifth factor, the source of applicable law, clearly counsels against finding the exceptional circumstances that warrant abstention. The presence of federal questions weighs heavily against abstention,[37] and the source of applicable law

**35.** *See Lops v. Lops,* 140 F.3d 927 (11th Cir. 1998) (finding no basis for *Colorado River* abstention in a Hague Convention proceeding after weighing the factors, despite the existence of parallel proceedings).

**36.** Courts determining custody in Virginia "give primary consideration to the best interests of the child." Va.Code § 20–124.2; *see also Farley v. Farley,* 9 Va.App. 326, 387

S.E.2d 794 (1990). By comparison, the success of a Hague Convention petition turns primarily on other factors, including the child's habitual residence and the exercise of custody rights. *See* Hague Convention, arts. 3, 13.

**37.** *See Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. 927 ("[T]he presence of federal law issues must always be a major consideration

here is solely federal. Thus, the balancing of factors counsels compellingly against the exercise of *Colorado River* abstention.[38]

The general principles expressed in the preamble of the Hague Convention also weigh against abstention here. Given the primary purpose of the Hague Convention "to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic [custody] court," *Miller*, 240 F.3d at 398, the forum choice of the party seeking the return of a child under the Convention deserves considerable deference. In sum, abstention in this action under either the *Younger* or *Colorado River* abstention doctrines is inappropriate.

### V.

In accordance with these principles, Rodriguez's motion to dismiss the petition must be denied. An appropriate Order has issued.

---

weighing against surrender."); *Colorado River*, 424 U.S. at 815 n. 21, 96 S.Ct. 1236 ("[T]he presence of a federal basis for jurisdiction may raise the level of justification needed for abstention.").

**38.** This case is readily distinguishable from *Copeland v. Copeland*, 1998 WL 45445 (4th Cir. Feb.6, 1998) (unpublished disposition), in which the Fourth Circuit affirmed a district court's discretionary exercise of *Colorado River* abstention in a Hague Convention suit. There, the state trial court had issued a final ruling denying the Hague Convention petition. Rather than appeal the state court ruling on the Hague Convention issue, the petitioner filed suit in federal district court, seeking to revive her ICARA and Hague Convention claims. In those circumstances, which differ sharply from those at bar, abstention would serve the interests of judicial economy.